```
 1 | KEKER & VAN NEST LLP
   | ROBERT A. VAN NEST - #84065
 2 | STEVEN K. TAYLOR - #204668
   | BENEDICT Y. HUR - #224018
 3 | AUDREY WALTON-HADLOCK - #250574
   | 633 Battery Street
 4 | San Francisco, CA 94111-1809
   | Telephone: (415) 391-5400
 5 | Facsimile: (415) 397-7188
 6 | Attorneys for Defendants
   | SLIDE, INC. AND GOOGLE INC.
```

FILED
2012 JAN 26 A 10:18
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
N.D. CA. SAN JOSE

E-FILING



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

CV12-00412 HRL

CHRISTALEE ABREU, individually and on behalf of a class of similarly situated individuals,

    Plaintiffs,

v.

SLIDE, INC. and GOOGLE INC.,

    Defendants.

Case No.

[Removed from Santa Clara County Superior Court Action No. 1:11-CV-215376]

**DEFENDANTS GOOGLE INC. AND SLIDE, INC.'S NOTICE OF REMOVAL**

Date Comp. Filed: December 20, 2011

Trial Date: None Set

1  TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE
2  NORTHERN DISTRICT OF CALIFORNIA:

    PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1331, 1332, 1446 and 1453 Defendants Google Inc. and Slide Inc. hereby remove the action entitled *Christalee Abreu v. Slide, Inc. and Google Inc.*, Santa Clara Superior Court Case No. 1:11-CV-215376, to this Court on the following grounds:

## I. THE COMPLAINT

1. On December 20, 2011, a purported class action complaint was filed in the Superior Court of the State of California, County of Santa Clara, entitled *Christalee Abreu v. Slide Inc. and Google Inc.*, Santa Clara Superior Court Case No. 1:11-CV-215376. Pursuant to 28 U.S.C. § 1446(a), a copy of the Complaint is submitted herewith. *See* Declaration of Benedict Y. Hur In Support of Defendants Google Inc. and Slide, Inc.'s Notice of Removal ("Hur Decl."), Exh. A. True and correct copies of all other process, pleadings, and orders filed and served in the state court action are submitted herewith. *See* Hur Decl., Exh. B.

2. The Complaint alleges that Defendants Google Inc. and Slide, Inc. violated a number of California laws and common law obligations in its management of an online game called "SuperPoke! Pets" in which users "adopt, name, and care for a virtual pet" and can "interact with their pet, dress it in outfits, and customize the pet's virtual environment." Complaint ¶ 12.

3. The Complaint alleges violations of California's Unfair Competition Law[1] and Consumer Legal Remedies Act,[2] alleges that provisions of the contracts governing use of SuperPoke! Pets are invalid under California laws invalidating unconscionable or unfairly exculpatory contracts,[3] and asserts claims of fraud in the inducement and unjust enrichment.

---

[1] Cal Bus. & Prof. Code §§ 17200, *et seq.*
[2] Cal. Civ. Code §§ 1750, *et seq.*
[3] Cal. Civ. Code §§ 1668, 1670.5

4. Plaintiff has styled the Complaint as a "Class Action Complaint" and seeks to represent and have certified two classes: (1) "All persons in the United States who have one or more registered SuperPoke! Pets accounts and have purchased virtual gold or in-game items from SPP-certified resellers" and (2) "All persons in the United States who have purchased one or more months of the SuperPoke Pets VIP status program." Complaint ¶ 54.

5. Beyond a class certification order, Plaintiff prays for the following relief for herself and the purported classes: (1) a declaration that Defendants' "Terms of Use that purportedly governing [sic] the use of the SPP game are invalid"; (2) a declaration that Defendants' alleged actions "violate the CLRA . . . and the UCL . . . and that Defendants' conduct constituted fraud in the inducement and unjust enrichment"; (3) an injunction barring Defendants "from terminating the SPP gaming application as announced in September, 2011"; (4) an injunction barring Defendants "from engaging in further violations of the CLRA and UCL"; (5) "restitution for monies unjustly received"; (6) actual damages; (7) attorneys' fees; (8) costs; (9) punitive damages; and (10) "such other and further relief as the Court may deem just and proper," including equitable or other relief. *See* Compl. Prayer For Relief at 24.

6. Plaintiff served Google and Slide with the Complaint and a summons from the state court by hand on December 27, 2011. Copies of the summons to each party are attached hereto as Hur Declaration Exhibit B. This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

7. Copies of this Notice of Removal are being duly served upon Plaintiff's counsel and filed with the Clerk of the Superior Court of California, County of Santa Clara, pursuant to 28 U.S.C. § 1446(d).

## II. JURISDICTION IS PROPER UNDER THE CLASS ACTION FAIRNESS ACT

8. This Court has original jurisdiction over this civil action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§1332 and 1453.

9. As set forth more fully below, this case is appropriately removed pursuant to 28 U.S.C. §§ 1441 and 1332 because (1) this is asserted to be a "class action" as defined under CAFA; (2) the number of members of the proposed plaintiff classes is at least 100; (3) the

matter in controversy as alleged exceeds the sum or value of $5,000,000, exclusive of interest and costs; (4) at least one member of the classes of plaintiffs is a citizen of a State different from one Defendant; and (5) the Notice of Removal is timely filed. *See also Wang v. Asset Acceptance LLC*, 680 F. Supp. 2d 1122, 1123 (N.D. Cal. 2010) (reciting requirements for CAFA removal).

### A. The "Class Action" Consists of Over 100 Members

10. CAFA permits removal of "class actions," a term defined as including "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule...authorizing an action to be brought by 1 or more representative persons as a class action." *See* 28 U.S.C. §§ 1332(d)(1)(B). Plaintiff's "Class Action Complaint" constitutes a "class action" under this CAFA definition because Plaintiff purportedly "brings this action pursuant to Fed. R. Civ. P. 23(b)(2) on behalf of herself and two classes of similarly situated individuals." Complaint ¶ 54.

11. CAFA allows removal of any class action where the "number of members of all proposed plaintiff classes" is greater than or equal to 100. *See* 28 U.S.C. § 1332(d)(5)(B). The proposed class that Plaintiff seeks to represent exceeds 100 members. Plaintiff seeks to represent a class of individuals throughout the United States and alleges that "there are thousands of persons in the Classes." Complaint ¶¶ 54, 55.

### B. Diversity Exists

12. Diversity under 28 U.S.C. § 1332(d)(2)(A) exists if at least one class member is diverse from at least one defendant.

13. Google is incorporated in Delaware with its principal place of business in California, and is therefore a citizen of Delaware and California. *See* Complaint ¶ 4. *See also Hertz v. Friend*, 130 S. Ct. 1181, 1192 (Feb. 23, 2010).

14. Plaintiff is a citizen of the state of California. *See* Complaint ¶ 3.

15. The purported plaintiff classes are nationwide classes of "All persons *in the United States* who have one or more registered SuperPoke! Pets accounts and have purchased virtual gold or in-game items from SPP-certified resellers" and "All persons *in the United States*

who have purchased one or more months of the SuperPoke Pets VIP status program." Complaint ¶54 (emphasis added). Plaintiff further alleges that Google and Slide "do[] business throughout the United States," presumably including the business of SuperPoke! Pets. Complaint ¶¶ 4 & 5. These allegations indicate that the putative classes are geographically diverse, hailing from throughout the United States. Accordingly, the putative classes include members who are citizens of neither Delaware nor California.

16. Because at least one member of the putative classes is a citizen of a State different from at least one Defendant, this action meets the minimal diversity requirement of 28 U.S.C. § 1332(d)(2).

C. **Amount in Controversy Exceeds $5,000,000**

17. For a defendant to remove an action to federal court under CAFA, the "matter in controversy must exceed the sum or value of $5,000,000, in the aggregate, exclusive of interest and costs." *See* 28 U.S.C. § 1332(d). That threshold is met here. Although Defendants deny that Plaintiff is entitled to any relief whatsoever, the allegations made by Plaintiff in her Complaint demonstrate that the total amount allegedly in controversy as a result of the claims of the putative classes she purports to represent exceeds the sum or value of $5,000,000. Plaintiff's Complaint seeks to recover alleged "actual damages" and "full restitution of all funds wrongfully obtained" (Complaint ¶ 118), as well as punitive damages and attorneys' fees, and other injunctive and declaratory relief. In so doing, Plaintiff apparently seeks to recover from Defendants *all* amounts that members of the putative classes paid to Defendants or third-party resellers in connection with their SuperPoke! Pets play. For example, Plaintiff asserts that "Plaintiff and each member of the classes have suffered injury in fact and lost money by purchasing 'gold' within the SPP gaming application, by buying goods from Defendants' 'affiliates,' and by joining Defendants' 'VIP status' program." Complaint ¶ 117; *see also* Complaint ¶ 109 (alleging "harm in the form of monies paid to Defendant"). Plaintiff also claims that she and the putative class members "have also been harmed by the diminution in value of the virtual items that they purchased from Defendants." Complaint ¶ 117.

18.     Plaintiff alleges that SuperPoke! Pets has a "large community of users" at least "tens of thousands in number." Complaint ¶ 13. In fact, publicly available information suggests that there were at least 7 million users in January, February, and March 2011. Hur Decl. Exhs. C, D & E. The Complaint alleges that the purchase of gold and of re-sold virtual items was central to the SuperPoke! Pets model, and indicates that a large number of the millions of SuperPoke! Pets users purchased such items. For example, Plaintiff alleges that although some free items were available in the game, "the vast majority of items, features, and content within SPP could be obtained only with gold" purchased with real-world money, and that "Defendants' primary goal was to induce users to purchase virtual gold." Complaint ¶ 17. Plaintiff similarly alleges that Defendants "allowed, encouraged, and assisted its customers in buying and selling virtual items for cash" both through the SPP game itself and through "the development of a robust secondary market" for purchases with real-world currency of "used" virtual items. Complaint ¶ 26, ¶ 21. As explained above, Plaintiff claims that "there are *thousands* of persons in the Classes"—indicating a minimum of 2,000 putative members in each of the two classes asserted—for a total of at least 4,000 members. Complaint ¶ 55 (emphasis added). The Complaint's other allegations about the central role of purchased and re-purchased items in the game, and the alleged "robust secondary market," suggest that more than just 4,000 players purchased gold or purchased re-sold items. Complaint ¶ 17, ¶ 21, ¶ 26. Moreover, if there were millions of users of Superpoke! Pets (Hur Decl. Ex. C)—rather than tens of thousands as alleged by Plaintiff—then the numbers of users who purchased gold is also likely to be even higher than that estimated by Plaintiff.

19.     Moreover, consistent with these suggestions, Plaintiff further alleges that after Defendants introduced the VIP Status subscription program, "*thousands* of SPP users signed up for the VIP Status program *within the first month* of its introduction" in late 2010. Complaint ¶ 20 (emphasis added). These users paid $4.95 per month. Complaint ¶ 20.

20.     Thus, Plaintiff is plainly seeking sums in excess of $5,000,000 from Defendants for herself and the putative classes through the claims in this action. Conservatively, publicly available information and Plaintiff's Complaint indicate a minimum total class population well

5

over 5,000 putative class members—and according to the Complaint, each of those class members spent substantial sums on gold and purchases on the secondary market. Specifically, Plaintiff alleges that "Defendants encourage users to spend hundreds or even thousands of dollars on virtual gold" (Complaint ¶ 32), and that she personally "has spent in excess of $1,000 purchasing gold from Defendants as well as in-game items from third-party sellers." Complaint ¶ 50. Plaintiff also asserts that her own "claims are typical of the claims of all of the other members of the Classes" (Complaint ¶ 56), indicating that the typical class member, like Plaintiff, will seek to recover in excess of $1,000 from Defendants. Multiplying a purported class population of well over 5,000 people by $1000 spent on gold and re-sold virtual items asserts a total amount in controversy in excess of $5,000,000, thus satisfying the CAFA standard.

21.  The Complaint also seeks to recover payment of attorneys' fees and punitive damages. *See* Complaint ¶ 118, Prayer for Relief ¶¶ (f), (h). Although no amounts are specified in the Complaint, Plaintiff presumably intends to seek a substantial amount for each of these items, and all such amounts are properly included in calculating the amount in controversy at issue under CAFA. *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 984 (S.D. Cal. 2005) ("The calculation of the amount in controversy takes into account claims for "general" damages, "special" damages, punitive damages if recoverable as a matter of law, and attorneys' fees recoverable by statute or contract."); *Tompkins v. Basic Research LL*, No. 08-244, 2008 WL 1808316, *4 (E.D. Cal. Apr. 22, 2008) (estimate of attorneys fees awarded in UCL, FAL, and CLRA claims should be included in amount in controversy calculation under CAFA).

22.  Although Defendants deny the allegations of the Complaint, and further deny that they have any liability to Plaintiff or the putative classes or that any member of the putative classes has suffered any cognizable injury or damages, or that the Complaint states any claim, the Complaint satisfies the jurisdictional amount-in-controversy requirement under CAFA. The nature and extent of Plaintiff's allegations and claims, along with the magnitude of Plaintiff's demands for alleged actual damages, restitution, punitive damages, and attorneys' fees, as well as injunctive relief, establish an alleged amount in controversy in excess of $5,000,000, exclusive of interest and costs.

1     23.     None of the removal exceptions contained in 28 U.S.C. §§ 1332(d) and 1453(d) are present in this action.

**D.     Removal Is Timely**

24.     Google and Slide were served with the Summons and Complaint on December 27, 2011. Under CAFA any defendant may unilaterally remove an action to federal district court. *See* 28 U.S.C. § 1453(b). This action therefore may be removed by Google or Slide on or before January 26, 2011, 30 days from the date either was served. *See* 28 U.S.C. § 1446(b).

### III.     JURISDICTION

25.     CAFA vests this Court with original jurisdiction over the Complaint, as explained above, and federal courts have original jurisdiction over actions arising under the "laws…of the United States." 28 U.S.C. § 1331. Thus, this Court has original jurisdiction over the Complaint under 28 U.S.C. §§ 1331 and 1332.

### IV.     VENUE AND INTRA-DISTRICT ASSIGNMENT

26.     Because the Complaint was filed and is currently pending in the Superior Court of California for the County of Santa Clara, this District is the proper venue for this action upon removal pursuant to 28 U.S.C. § 1441(a), and the San Jose Division is the proper intra-District assignment for this action upon removal pursuant to Civil L.R. 3-2(e).

### V.     NON-WAIVER OF DEFENSES

Defendants expressly reserve all of their defenses. Defendants deny the allegations of the Complaint, and further deny that they have any liability to Plaintiff or the putative classes or that any member of the putative classes has suffered any cognizable injury or damages, or that the Complaint states any claim. *See, e.g., Key v. DSW, Inc.*, 454 F. Supp. 2d 684, 691 (S.D. Ohio 2006) ("the fact that Defendant removed the case does not mean that Defendant concedes that Plaintiff has adequately alleged appropriate damages").

//
//
//
//

## VI. DEMAND FOR JURY TRIAL

Defendants hereby demand trial by jury on all issues so triable.

Dated: January 26, 2012

Respectfully submitted,

KEKER & VAN NEST LLP

By: _____
BENEDICT Y. HUR
Attorneys for Defendant SLIDE, INC.
AND GOOGLE INC